This matter is submitted and we'll go on to the final matter on calendar this morning. Come on up, counsel. May I please reserve four minutes for rebuttal? You may. This is a trademark infringement case. The district court erred in You're Mr. Smith? Yes, Your Honor. Proceed. Thank you so much. The district court erred in striking Cirrus' jury demand in this case. The Seventh Amendment gives them a jury trial right on their profits claim under the Lanham Act. The Ninth Circuit's precedent on this issue is irreconcilably in conflict. We would ask this panel to refer this issue to an en banc panel as required by this court's decision in Antonio. You agree that 56 Hope Road Music, I love the names of the cases in this area, is against your position? Yes, Your Honor, but it's Because your client essentially sought equitable relief. Well, we sought profits under the Lanham Act. 56 Hope Road says that there is no jury trial right for that. The earlier case, Sid and Marty Croft, which is also a fun name, says that there is a jury trial right. Those cases are irreconcilably in conflict. And we believe this case needs to go to an en banc panel. And I think that's first and foremost in the control of this panel. And if this court were to refer that issue to an en banc panel, you can avoid looking at the second issue, which is the district court's misapplication of the sleek craft factors and not really paying enough attention to sponsorship or affiliation infringement. But we also believe that as a matter of legal reasoning, that this court's opinion in the Croft case is superior to that of the reasoning in 56 Hope Road. The question becomes why? It may be that 56 Hope Road was 70 plus years beyond the merger of law and equity. The decision in Swofford, the decision in Croft, those cases are much closer to the merger of law and equity. And they apply Supreme Court precedent in the proper way as we have analyzed it in our briefing and in our reply brief. You have to start the Seventh Amendment with the right and the second step is the remedy. The right here is trademark. Trademark is property. And infringement of a trademark is a tort. And so the Lanham Act gives you monetary relief for that infringement, which is damages and profits. And so that, those are the remedies that the Lanham Act provides. And those remedies are also covered by a jury trial right because they're monetary. I thought what you were fundamentally seeking was a declaration, a declaratory judgment that your client was not infringing Cirrus. No, that's my opponent, Your Honor. My opponent was the natural defendant in this infringement case, but they filed their lawsuit here first. Oh, okay, gotcha, gotcha. The natural plaintiff was the defendant. And so our claim is that Cirrus Aviation Services infringed our trademark, which is an incontestable mark, and we are the senior user. And so our contention here is that we're entitled to a jury trial on what is monetary relief. I mean, this claim in tort would be akin to something in trespass or trover. My opponent has stolen my property and profited from it, and I'm entitled to get those profits back. And in common law, that would be a legal claim at law for a jury to resolve. That is not equitable relief. The U.S. Supreme Court has made it clear in Feltner that those sorts of monetary claims, looking back to Dairy Queen, are for a jury. And so it would be an odd situation in trademark for there to be three monetary claims, namely damages, profits, and statutory damages, but only two of those would go to a jury, and one would be for the bench. The Supreme Court made it clear in 98 in Feltner that statutory damages are for a jury. Obviously, damages are for a jury. And so profits, our contention is that profits should also be for a jury. My understanding is that Antonio would require reference to an en banc panel here, and that would be Let me ask you this. What's the other side of that argument on profits, that it's like an accounting? Yes, Your Honor. But the question about accounting is that that has also always been a legal claim. It just so happens that in the Chancery Court's cleanup jurisdiction, it could award an accounting at the back end. But an accounting of profits naked has always been a legal claim. And the Root case is the one that makes that point in patent. And then the Hamilton-Brown case comes behind that in the Supreme Court and applies that in trademark. So you have to have a hook for a chancellor to award an accounting. But as a matter of common law, it was always a legal claim. And it's all the more so here because it's just money damages. And so Dairy Queen and Feltner say that damages are claims for a jury. And it's also, Judge Tashima, I was going to point out, the Lanham Act doesn't speak in terms of an accounting. It simply says that you're entitled to profits. And then it goes further to say that that is a remedy in compensation. So if you look at Pomeroy, Pomeroy would say accounting is a form of compensation. And it was always legal, although a chancellor might have some subsidiary ability to award that. But the question for the Seventh Amendment is, what is it at heart? And here it's a tort. It's just as if you stole a bushel of almonds from my barn or took timber from my property, took it to market and sold it. My damages are your profits. If the court has no questions, I'll reserve for rebuttal. Thank you. Thank you, Counsel. You're good. Good morning, Your Honors. My name is Colleen McCarty, and I represent Rate Western Air, LLC, doing business as Cirrus Aviation Services. For the purposes of this argument, I will refer to my client as Cirrus Aviation, and as the appellant, Cirrus Design Services, as Cirrus Design, which is how we did it at trial. May it please the court. Cirrus Aviation and Cirrus Design share the same name, but for all practical purposes, the similarities begin and end there. For 13 years, the two companies have coexisted with zero impact on one another, except perhaps this lawsuit. Following a four-day bench trial, the district court understood this reality, noting correctly that Cirrus Aviation's customers want to be passengers, while Cirrus Design's customers want to be pilots. And when applying this court's flexible approach, the district court could not find that Cirrus Design's planes and Cirrus Aviation's flight would reasonably be thought by the buying public to come from the same source. In a trademark action, this court looks at, may not disturb the district court's legal and factual determinations, but for clear error. And to further emphasize this very high bar, the court in Interstellar Starship Services said, quote, if the district court's account of the evidence is plausible, in light of the record viewed in its entirety, the court may not reverse, even though convinced that if the court had been sitting as their trier of fact, the court would have weighed the evidence differently. Cirrus Design has chosen first to touch on the jury trial aspect of this case. I'm going to first touch on the trademark infringement aspect of this case. Cirrus Design has asserted that the court here did not consider the full range of confusion under the Lanham Act. And respectfully, that is simply not the case when you look at the court's thoughtful and well-reasoned decision. The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the goods or services bearing on one of the marks. The plain language of the Lanham Act also includes likelihood of confusion as to affiliation, connection or association, or sponsorship or approval. This circuit does not require the district court to list every type of confusion in each of the eight sleek craft factors. But if you look at the district court's decision, it most certainly considered things like sponsorship, affiliation, and approval. And courts can reach a conclusion with regard to the likelihood of confusion by considering only a subset of factors. This test is, the words used are flexible, pliant. In one case, they talked about, we do not count beans. The sleek craft factors are guidance. They are not a rote checklist. And in this particular case, while the court considered all the sleek craft factors, it gave them each different weight, as well it should have. And it's important to note that trademark infringement protects only against mistaken purchasing decisions and not against confusion generally. When you look at the district court's decision, when it talked about the intent in selecting the mark, it referred to whether or not the consumers believed that goods or services bearing the junior mark came from or were sponsored by the senior mark holder. It used the word sponsored because it looked like, at whether or not Cirrus Aviation derived any goodwill from any association with Cirrus Design. And it determined that because there are two different markets here, there is a charter market and there is a plane manufacturing market for pilots, that there was no goodwill that could be derived. Cirrus Aviation customers want a Gulfstream. Cirrus Design manufactures the equivalent of a puddle jumper. They are small, single-engine airplanes. There isn't any goodwill that can be derived from one from the other, frankly, when you have completely different markets and a completely different customer base. Do you want to talk jury trial? Yes, sir. I will absolutely skip to jury trial if that's where you want to go. Respectfully, I have to disagree with Cirrus Design's position. There is no Seventh Amendment right to a jury trial in this case. 56 Hope Road is controlling, and their reliance on Sid and Marty Croft and, frankly, Dairy Queen is misplaced. When you look at how the court determines whether or not there is a right to a jury trial, first you look at whether the 18th century actions brought in courts in England before the courts of law and equity were brought in which court, legal, equitable. You also look at whether you must examine the remedy sought and determine whether it is legal or equitable in nature. In this particular case, Cirrus Design sought only disgorgement of profits. They did so because there weren't any actual damages in this case. There was zero discussion at trial about any sort of actual damages. They sought entirely disgorgement of profits. It was clear to everyone that was the only remedy that they were seeking other than injunctive relief. When the court looks at whether juries typically decided the issue many, many, many, many years ago, in this particular case, courts have found that disgorgement of profits, there's not a lot of case law there. So then you have to go back and look at whether or not this is one of those incidents that are regarded as fundamental and inherent in and of the essence of assistance of trial by jury and are placed beyond the reach of the legislature. Disgorgement of profits is not a liberty interest. Disgorgement of profits is not the kind of thing that the legal courts typically decided. It was decided by courts in equity. 56 Hope Road is the first time that this circuit has decided the issue of whether disgorgement of profits under the Lanham Act is equitable as opposed to legal. They are relying on Sid and Marty Croft, but Sid and Marty Croft, first, was a copyright action, not a trademark action. Second, the jury in Croft decided actual damages, and then they decided amongst themselves that the court would determine disgorgement of profits. And when you look at many of the cases that Sears Design relies on, you have that same situation where you had legal questions and equitable remedies. This case is not that. Sears Design only sought legal or, excuse me, equitable remedies here. There were no actual damages and disgorgement of profits. It was only disgorgement of profits. Additionally, when you look at the J.L. Beveridge case, Circuit Judge Friedland took a great deal of time to discuss why the Lanham Act, under disgorgement of profits, is an equitable remedy. And she talked about that Croft hasn't been relied on in 50 years. She talked about that Croft is not the same as the facts in J.L. Beveridge, where they were only seeking disgorgement of profits, and here, where they were only seeking disgorgement of profits. When you look at Dairy Queen, the reliance on Dairy Queen, frankly, is completely misplaced. Dairy Queen was a breach of contract action. The damages in Dairy Queen were related to a breach of the party's agreement and what profits under the agreement that the defendant was entitled to. It was not a disgorgement of profits case. And the Supreme Court has said as much in Feltner, finding that it characterized Dairy Queen as one for legal damages, not disgorgement of profits. In this particular case, serious design sought an equitable remedy, and the court agreed that 56 Hope Road was controlling. Croft did not decide the same question. This is not an intra-circuit split. This is not something that you need to take to an en banc panel. Disgorgement of profits has traditionally been an equitable remedy. This circuit has said that it's an equitable remedy, and there's no reason to go any further with that, and the court correctly decided this particular issue. I did want to get back to some of the issues with regard to whether or not the district court correctly included other issues with regard to confusion. In this particular case, it also looked at the test as to whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing on one of the marks. Trademark infringement protects against mistaken purchasing decisions and not confusion generally. In this particular case, a reasonably prudent consumer isn't going to accidentally buy an airplane when it wants to buy a ticket to Paris. These are completely different markets, completely different customer base, and the court looked at all of these different issues and correctly decided it in its totality. And with that, Your Honors, I will, unless you have any questions for me, I want to point out to the court that this case, the court didn't consider to fail, didn't fail to consider the evidence. It didn't misapply any particular tests. It was under the serious design as understandably disappointed by the decision, but it is not an error on this court, and we ask you to affirm. Thank you, counsel. So if we're right on this jury trial issue, the court doesn't need to reach the second issue because we have a new trial. Mallory, in 1871, said as to profits, they are called profits but they are really damages. That's 1871, so that's been the law for a long time. The point about Sid and Marty Croft and 56 Hope Road, one being a copyright case and one being a trademark case, is a distinction without a difference. Four cases subsequent in this court have recognized the conflict between these two decisions. That's jail beverage. Judge Friedland wrote a really good concurrence talking about the conflict. Jarrow formulas, five platters, and Microsoft are four decisions, two published, two unpublished, that deal with the conflict. It's an issue that needs to be resolved. It's important. It's an intellectual property issue. Distinguishing cases based upon whether they arise in trademark or in copyright or in patent doesn't answer the question because it's all about infringement of what is an intangible property right and the remedies that the Lanham Act gives are monetary. She said that this is just an injunction case. That's not true. If you look at our complaint, we asked for a finding of infringement, which is the right that we're prosecuting under the Lanham Act, and we've asked for profits, and she called it disgorgement. The Lanham Act doesn't speak in those terms either, and our complaint doesn't either. Nine excerpts of record at 1872, we simply said they should pay us profits for using our senior mark. As to the sleek craft factors, if you're looking at this as a Venn diagram, there's almost no space. They almost completely overlap. The services that are being provided by these two entities in general aviation are the same. The only difference is that they are a charter and we're a manufacturer, but we're all providing the same aircraft services in terms of management, in terms of service, in terms of all of those things, training. She said that there was a 13-year coexistence. The timeline is a little different. There have been 15 years between 2010 and today, 14 years, and in that period, these parties have been in dispute for 10 of those 14 years. So in 2010, Cirrus Aviation Services started using our mark. In 2013, we registered with the TTAB a new service mark for charter. The next year, several months later, in 2014, we discovered that they were using our mark, and in 2014, 15, and 16, there were letters exchanged between the parties to cease and desist. The lawsuit was filed in 2016 by my opponent, and so in the intervening 14 years, the parties have been disputing this trademark for a decade. So this sense of 13-year coexistence doesn't match up with the record. In terms of sleek craft and the factors, it's really not an incantation. The point is to look at what is really in dispute, and here you have an unusual trademark infringement case because it's the exact same mark that's being used by the junior user, and it's all in the same industry. This court in Stone Creek, Palm Wonderful, and in Brookfield has dealt with this issue. These are mixed questions of law and fact, and here, reading the district court's opinion, it is clear that the court was only looking at source. My opponent used examples here that were used by the district court about someone riding in a charter, is not confused about whether they bought the plane and are flying it. Those are source hypotheticals, and if you use that as the only test, you're rewriting the Lanham Act because the Lanham Act says that it is also infringement to act as if Cirrus, my client, sponsors this charter. And so we would ask the court to please, as a panel under Antonio, to refer this to an en banc panel for a decision on the Seventh Amendment. Is there anything in the record about actual confusion or any other kind of confusion? Yes, Your Honor, and that's why I brought up the Stone Creek case because this court made it clear that you can't ignore actual confusion. The Lanham Act speaks in terms of likelihood of confusion, and we showed that not only were consumers confused, but vendors were confused, and the general public in terms of social media was confused, but the most important examples were there was a Cirrus aircraft owner who contacted her client for services on that aircraft. That was consumer confusion on my side. There's also proof that one of her customers reached out to our people because they were trying to charter a flight. So that is two instances of consumer confusion. There's also vendors who reached out to both parties trying to assume that they were associated. So if you're interested in that, we deal with it in the blue brief at page 33, but it's Defendant's Exhibit 14 and four excerpts of record at 526 through 27 is the proof of actual confusion, and because it's a test about likelihood of confusion, when you have actual confusion, you can't just ignore it. This is the case with the comedian Rob Riggle. Got the names wrong? Yes, that's one of them. The district judge made a funny point about that, said that he was taking judicial notice that Rob Riggle was not funny. Thank you for your time. Thank you so much. Thank you both parties for their argument and briefing in this very interesting case. This matter is submitted, and we're done for the day. Thank you.
judges: HAWKINS, TASHIMA, OWENS